O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINK TREASURE LIMITED, a company organized and existing under the laws of the British Virgin Islands, and DISCOVERY INTERNATIONAL CO., LTD., a company organized and existing under the laws of the British Virgin Islands,<br><br>        Plaintiff,<br><br>  v.<br><br>BABY TREND, INC., a corporation organized and existing under the laws of the state of California,<br><br>        Defendants. | Case No. EDCV 07-828-VAP (OPx)<br><br>**CLAIM CONSTRUCTION ORDER** |

The Court conducted a hearing on October 23, 2008 on the parties' proposed constructions of certain terms in claim one of U.S. Patent No. 5,876,057 ("The '057 Patent"), pursuant to Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) (en banc) *aff'd*, 517 U.S. 370 (1996). Having considered the parties' written

submissions, as well as the arguments advanced by counsel at the hearing, the Court now issues its claim construction order.

## I. INTRODUCTION

On August 18, 2006, Plaintiff Link Treasure Limited ("Link") filed a Complaint in the United States District Court, Northern District of Georgia, against Defendant Baby Trend, Inc., accusing Defendant of infringing Patent '057, entitled "Folding Device for a Stroller," and Patent No. D430,826, entitled "Frame of Three-Wheeled Stroller."

On June 18, 2007, the District Court in Georgia granted Defendant's Motion to Transfer Venue, and transferred the case to this Court.

## II. LEGAL STANDARD

Claim construction is a legal question for the Court. Markman, 517 U.S. at 390; Cyborg Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). To construe a claim, a court may consider the claim, the specifications, and the prosecution file history. Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc). "Any articulated definition of a claim term ultimately must relate to the infringement question

it was intended to answer."  E-Pass Tech, Inc. v. 3Com Corp., 473 F.3d 1213, 1219 (Fed. Cir. 2007).

The Court begins its construction of a patent claim with the words of the claim itself, which "are generally given their ordinary and customary meaning . . . , the meaning that the term would have to a person of ordinary skill in the art in question . . . as of the [patent's] effective filing date."  Phillips, 415 F.3d at 1312-13.

The Court looks to the patent specifications when construing "the meaning of a claim term as it is used by the inventor in the context of the entirety of his invention. . . ."  Comark Comm. v. Harris Corp., 156 F.3d 1182, 1187 (Fed. Cir. 1998).  Furthermore, in Phillips, the Federal Circuit emphasized the specification's critical importance: it "is always highly relevant to the claim construction analysis.  Usually it is dispositive; it is the single best guide to the meaning of a disputed term."  Phillips, 415 F.3d at 1315 (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

The prosecution history, like the specifications, provides evidence of how the Patent Officer and the inventor understood the patent.  Phillips, 415 F.3d at 1317 (citing Lemelson v. Gen. Mills, Inc., 968 F.2d 1202,

1206 (Fed. Cir. 1992)).  The prosecution history "represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes."  Id. (citing Inverness Med. Switz. GmbH v. Warner Lambert Co., 309 F.3d 1373, 1380-82 (Fed. Cir. 2002); Athletic Alternatives, Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1580 (Fed. Cir. 1996)).  The prosecution history, however, is important because it can demonstrate "whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be."  Id. (citing Vitronics, 90 F.3d at 1582-83; Chimie v. PPG Indus., Inc., 402 F.3d 1371, 1384 (Fed. Cir. 2005)).

In Phillips, the Federal Circuit also addressed the use of dictionaries in claim construction, reiterating that "[i]n some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. . . .  In such circumstances, general purpose dictionaries may be helpful."  Phillips, 415 F.3d at 1314 (citing Brown v. 3M, 265 F.3d 1349, 1352 (Fed. Cir. 2001)).  Overall, extrinsic evidence is "less

significant than the intrinsic record in determining the legally operative meaning of the claim language." Id. at 1317 (citation omitted.)  With these principles in mind, the Court turns to the terms at issue here.

### III. CLAIM CONSTRUCTION

All of the disputed terms appear in Claim One of the '057 Patent.

**A.   Claim 1: "Strip"**

Plaintiff Link proposes the claim term "strip" be construed as follows: "a relatively thin and inextensible piece of material of uniform width."  (Joint Claim Constructions at 2.)  Defendant Baby Trend proposes the term be construed as "a piece of material that is long, narrow, and flat."[1]  (Id.)

The parties dispute only whether "flat" should be included in the construction.  Plaintiff Link opposes its inclusion, contending that given the intrinsic evidence, the "strip" described in the patent is a piece of material that is curved and not "flat."  (See Link Br. at 13-14.)

///

---

[1] Defendant Baby Trend cites to dictionary definitions as its extrinsic support; the Court need not resort to such definitions because the ordinary meaning is apparent readily.  Accord Phillips, 415 F.3d at 1314.

In construing a claim, the Court must give the disputed claim term meaning it would have to a person of ordinary skill in the art in question at the time of the invention, "who views the claim term in light of the entire intrinsic record." Nystrom v. Trex Co, 424 F.3d 1136, 1142 (Fed. Cir. 2005). Also, the Court must determine the ordinary meaning in the context of the written description and the prosecution history, not in a vacuum. See Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313, 1319 (Fed. Cir. 2005).

Viewing the claim in light of the intrinsic record here, the Court finds that the "strip," identified as 50 in the '057 patent specifications, figures 3, 4, 5, and 7, is curved along the length of the stroller arm. See, e.g., '057 Patent, Figs. 3-5, 7. The strip's function is movement that triggers the sliding plate (44) which in turn moves and disengages from the cover (112); the strip itself is flat but assumes the curvature of the arm of the stroller. If the strip were a rigid curved form, it would be locked into place, unable to move along the upper support (20) of the stroller.

The intrinsic record also reveals that the strip is flexible, as it assumes the curve of the stroller arm's upper support, but cannot expand or contract. Otherwise, the strip could not serve its function in engaging the

collapsing process of the stroller by triggering the sliding plate to disengage from the cover, as described above.

The language of the patent and its attached diagrams and specifications support a combination of the proposed constructions of the parties. (See Patent No. '057 fig. 5; col. 2, ll. 37-41, 55-65.)

Accordingly, the Court construes Claim One as follows: "The strip is a piece of inextensible material that is long, narrow, and flat."

**B.   Claim 2: Sliding Plate**

Although the parties originally sought a claim construction on the term "sliding plate," they have since withdrawn that request.

**C.   Claim 3: Recovery Member**

The third claim reads as follows: "recovery member having a first end securely mounted to a distal end of the upper support and a second end of which is securely connected with said sliding plate." (Joint Claim Constructions at 9.) Plaintiff Link proposes that the Court construe the claim term as follows:

> "one or more components that exert a force that returns one or more other components to their original position(s) or location(s) and that is positioned between the sliding plate and one end of

> the upper support such that the recovery member's first end is attached at or near the end of the upper support that is farthest away from the handle in a manner such that the recovery member does not come loose during normal operation of the mechanism and that is attached at another end to the sliding plate in a manner such that the recovery member does not come loose during normal operation of the mechanism." (Id. at 9-10.)

Defendant Baby Trend's proposed construction is:

> "the recovery member is positioned between the sliding plate and the distal end of the upper support by the recovery member's first end being securely mounted at or near the edge of the upper support that is farthest away from the handle and its second end being securely connected to the sliding plate at a position between the first end of the recovery member and the handle." (Id.)

The crux of the discord between the parties' proposed constructions is whether or not the recovery member is attached at the "end" or to the "edge" of the upper support that is farthest away from the handle.

The Court notes that neither party's construction gives much better a description than does the patent itself. The patent's "Detailed Description of Preferred Embodiment" states "[a] first end of the recovery member 43 is securely mounted on a distal end of the upper support 20 and a second end thereof is securely connected to the sliding plate 44, thereby allowing a reciprocating movement of the sliding plate 44 due to the provisions of the recovery member 43." Patent No. '057, col. 2 ll. 41-46.

///

1 Upon review of the entire intrinsic record, the Court
2 finds it unnecessary to include in the construction, as
3 Plaintiff Link proposes, any description why the recovery
4 member is attached securely to the upper support.  (See
5 Joint Claim Constructions at 9 (recovery member is
6 attached "in a manner such that the recovery member does
7 not come loose during normal operation of the
8 mechanism").)  Such additional language is unnecessary
9 because the recovery member can be construed sufficiently
10 without reference to it; also, the additional language is
11 unsupported by the intrinsic record.  See Netword, LLC v.
12 Centraal Corp., 242 F.3d 1347, 1352 (Fed. Cir.
13 2001)(claims cannot "enlarge what is patented beyond what
14 the inventor has described in the invention").

16 After review of the specifications and preferred
17 embodiment, the Court agrees with Plaintiff Link that
18 using the word "edge" is not supported by the intrinsic
19 record.  The recovery member is affixed to the upper
20 support at a point near the end of the upper support, but
21 not at the edge of the upper support.  (See, e.g., Patent
22 No. '057, fig. 7.)

24 The Court construes Claim Three as follows: "The
25 recovery member is the component positioned between the
26 sliding plate and the distal end of the upper support,
27 with its first end attached securely at or near the end

of the upper support that is farthest away from the handle and its second end being connected securely to the sliding plate."

**D.   Claim 4: Having a Recess Defined [in the Cover]**

Plaintiff Link proposes the Court adopt the following construction of the claim term "having a recess defined [in the cover]": "having an indentation or depression in the structure that overlays at least a portion of the top of the front support of the stroller." (Joint Claim Constructions at 14.)  Defendant Baby Trend proposes the Court construe it to mean "a surface of the cover has a hole or hollow."  (Id.)

Upon review of the intrinsic record, the claim term, referred to as 113, describes a semi-circular recess or notch carved out of the upper section of the cover. (See Patent. No. '057, fig. 3-5, 7.)  The notch itself is received and latches into the sliding plate; when the notch is released by the trigger pulling the sliding plate up the stroller arm, the collapsing mechanism of the stroller is engaged.  (See id.)

Based on the intrinsic record, the Court adopts Plaintiff Link's proposed construction, in part.  Link's construction describes more than "having a recess defined" by explaining how the recess relates to the rest

of the stroller construction.  The Court limits the construction to the scope of the claim term itself.  See <u>Netword, LLC</u>, 242 F.3d at 1352.

The Court construes Claim Four as follows: "having an indentation or depression."

Dated: <u>November 13, 2008</u>

           VIRGINIA A. PHILLIPS
United States District Judge