1

2

3                                                            O

4

5

6

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11  LINK TREASURE LIMITED, a)     Case No. EDCV 07-828-VAP
    company organized and    )    (OPx)
12  existing under the laws  )
    of the British Virgin    )    **ORDER GRANTING DEFENDANT'S**
13  Islands, ~~and DISCOVERY~~ )    **MOTION FOR SUMMARY JUDGMENT**
    ~~INTERNATIONAL CO., LTD.,~~ )
14  ~~a company organized and~~ )    **[Motion filed on April 25,**
    ~~existing under the laws~~ )    **2011]**
15  ~~of the British Virgin~~   )
    ~~Islands,~~                )
16                             )
                 Plaintiff,    )
17                             )
         v.                    )
18                             )
    BABY TREND, INC., a        )
19  corporation organized      )
    and existing under the     )
20  laws of the state of       )
    California,                )
21                             )
                 Defendants.   )
22  _____    )

23

24       Plaintiff Link Treasure Limited ("Plaintiff") filed

     this action for patent infringement, alleging that
25
     Defendant Baby Trend, Inc. ("Defendant") infringed two
26
     patents owned by Plaintiff relating to folding baby
27
     strollers.  Defendant brought a counterclaim against
28
     Plaintiff for a declaratory judgment of non-infringement,

1   invalidity, and unenforceability of the asserted patents.

2   Before the Court is Defendant's motion for summary

3   judgment or partial summary judgment on Plaintiff's

4   claims and Defendant's counterclaim and affirmative

5   defenses ("Motion").  The parties came before the Court

6   for a hearing on July 18, 2011.  After considering the

7   arguments in support of and in opposition to the Motion,

8   the Court GRANTS the Motion.

9

10                    **I.  BACKGROUND**

11  **A.   Procedural History**

12       On August 18, 2006, Plaintiff and former co-plaintiff

13  Discovery International Co., Ltd. ("Discovery") filed a

14  complaint against Defendant in the Northern District of

15  Georgia.  (Link Treasure Ltd. v. Baby Trend, Inc., No.

16  06-1930 (N.D. Ga. filed Aug. 18, 2006), Doc. No. 1

17  (Compl.).[1])  In the Complaint, Plaintiff accused

18  Defendant of infringing two patents it owns by

19  assignment:  (1) U.S. Patent No. 5,876,057, issued on

20  March 2, 1999, a utility patent entitled "Folding Device

21  for a Stroller" (the "'057 patent"); and (2) U.S. Patent

22  _____

23       [1] The action was transferred to this Court on June
     18, 2007, at which time the action received a new case
24   number.  Link Treasure Ltd. v. Baby Trend, Inc., No. 07-
     828 (C.D. Cal. transferred Jun. 18, 2007).  Although all
25   documents filed after July 16, 2007, were filed on the
     Central District of California docket, each document in
26   this action was numbered continuously and thus each
     document has a unique electronic document number ("Doc.
27   No.").  Accordingly, the Court cites the document number
     for the relevant documents without distinguishing between
28   the Georgia and the California dockets.

                            2

No. D430,826, issued on September 12, 2000, a design patent entitled "Frame of Three-Wheeled Stroller" (the "'826 patent").  (Compl. ¶¶ 1, 8-25.)  On December 15, 2006, Plaintiff filed a First Amended Complaint ("FAC") against Defendant, asserting the same claims but removing Discovery as a party.  (Doc. No. 27.)

On October 11, 2006, Defendant filed its answer and a counterclaim against Plaintiff seeking a declaratory judgment of non-infringement, invalidity, and unenforceability of the '057 patent and the '826 patent. (Doc. No. 6.)  On June 18, 2007, the District Court in Georgia granted Defendant's Motion to Transfer Venue, transferring the case to this Court.  (Doc. No. 57.)

On October 23, 2008, the Court held a <u>Markman</u> hearing regarding claim construction for certain terms in the '057 patent, and on November 13, 2008, the Court issued a Claim Construction Order.  (Doc. No. 85 (Claim Constr. Order).)  On October 22, 2009, Defendant filed a Notice of Stay and Filing of Bankruptcy Petition.  (Doc. No. 104.)  On January 27, 2010, the Court stayed the action pending resolution of Defendant's bankruptcy petition. (Doc. No. 105.)  On February 8, 2011, the Court withdrew the reference to the Bankruptcy Court in part.  (Doc. No. 106.)

1     On April 25, 2011, Defendant filed the Motion (Doc.

2  No. 112), along with:  (1) a statement of uncontroverted

3  facts and conclusions of law ("SUF") (Doc. No. 112-1);

4  (2) a declaration of Danny Tsai ("Tsai Declaration"),

5  attaching exhibits A through M, X, and Z (Doc. No. 112-

6  2); (3) a declaration of Edward Lin ("Lin Declaration"),

7  attaching exhibits N through W (Doc. No. 112-3); (4) a

8  declaration of Deborah S. Mallgrave ("Mallgrave

9  Declaration"), attaching exhibit Y (Doc. No. 112-4); and

10  (5) a request for judicial notice ("RJN")[2] (Doc. No.

11  113).

12

13     On May 23, 2011, Plaintiff filed its opposition to

14  the Motion ("Opposition") (Doc. No. 114), along with:

15  (1) a statement of genuine issues ("SGI") and statement

16  of uncontroverted material facts ("UMF") (Doc. No. 114-

17  1); (2) a declaration of Harold J. Fassnacht ("Fassnacht

18  Declaration"), attaching exhibits A through E (Doc. No.

19  114-2); and (3) a declaration from Ruby Wu ("Wu

20  Declaration"), attaching Exhibit A (Doc. No. 114-3).

21

22

23

24     [2] Defendant requests the Court take judicial notice
of documents the parties filed in the District Court for

25  the Northern District of Georgia and in the Bankruptcy
Court for the Central District of California while the

26  action was before these courts.  (See RJN at 2-3.)  The
Court finds these documents appropriate for judicial

27  notice, see Fed. R. Evid. 201, and Plaintiff does not
challenge their authenticity.  Accordingly, the Court

28  takes judicial notice of the requested documents.

1    On May 27, 2011, Defendant filed its reply in support
2    of the Motion ("Reply") (Doc. No. 115), along with
3    evidentiary objections to the Fassnacht and Wu
4    Declarations ("Defendant's Evidentiary Objections") (Doc.
5    No. 116).

6

7    **B.   Evidentiary Objections**

8    First, Defendant objects to both the Fassnacht and Wu
9    Declarations because they do not satisfy the statutory
10   requirement of 28 U.S.C. § 1746 that the statements
11   within be sworn under penalty of perjury.  (Def.'s
12   Evidentiary Objections at 2.)  Defendant also objects to
13   the statements in the Wu Declaration as lacking
14   foundation as to personal knowledge, and containing only
15   conclusory statements, speculation, and hearsay.  (Id. at
16   2-9.)

17

18   The Court sustains Defendant's objections to the
19   Fassnacht and Wu Declarations on both grounds.  First,
20   compliance with the requirement of 28 U.S.C. § 1746 is
21   mandatory, and neither Fassnacht nor Wu comply with its
22   requirements by stating that their declarations are made
23   under penalty of perjury.  See, e.g., Schroeder v.
24   McDonald, 55 F.3d 454, 460 n.10 (9th Cir. 1995)
25   (accepting as valid a declaration that did not follow §
26   1746 with precision, but asserted that statement was made
27   under penalty of perjury that the contents were true and

28

5

correct).  Defendant filed its objections on May 27,
2011, and therefore Plaintiff had ample notice of this
deficiency, and could have remedied it by submitting
sworn declarations.  Plaintiff failed to do so.

    Additionally, Defendant's objections to the Wu
Declaration are well-taken.  In her declaration, Wu does
not state her job title, her job responsibilities, or why
or how she has knowledge of the facts she asserts.
Accordingly, the Wu Declaration is inadmissible under
Federal Rule of Civil Procedure 56(c)(4) as lacking an
adequate foundation.  Accordingly, the Court does not
rely upon the statements in either the Fassnacht or Wu
Declarations to resolve the Motion.

**C.  Uncontroverted Facts**

    The Court finds the following material facts are
supported adequately by admissible evidence and are
uncontroverted.  They are "admitted to exist without
controversy" for the purposes of these Motions.  L.R. 56-
3; see generally Fed. R. Civ. P. 56.

    **1.  The '826 Patent**

    The '826 patent was filed on December 27, 1999, and
assigned to Plaintiff.  (SUF ¶ 1; UMF ¶ 1.)  The
"critical date," or "bar date," for purposes of an on-
sale bar is thus December 27, 1998.  (SUF ¶ 2; UMF ¶ 2.)

1    Lerado Group, Ltd. ("Lerado") is Plaintiff's parent
2    company, and is responsible for manufacturing strollers
3    for Plaintiff.[3]  (SUF ¶ 3; UMF ¶ 3.)  Defendant is a
4    California company, located in Ontario, California.  (SUF
5    ¶ 4; UMF ¶ 4.)  Before the critical date of December 27,
6    1998, Defendant and Lerado were negotiating the sale of
7    Lerado Model T-415 strollers ("T-415 Strollers") to
8    Defendant.[4]  (SUF ¶ 5; UMF ¶ 5.)  These negotiations took
9    place in person and through correspondence.  (SUF ¶ 6;
10   UMF ¶ 6.)

11

12   In mid-1998, Defendant's director Denny Tsai ("Tsai")
13   visited the Lerado factory in China.  (SUF ¶ 7; Tsai
14   Decl. ¶ 3; UMF ¶ 7.)  During that visit, Tsai was shown a
15   sample of what he believes was the T-415 Stroller.  (SUF
16   ¶ 7; Tsai Decl. ¶ 3.)  During the fall of 1998, employees
17   at Lerado sent Tsai photographs and a sample of a T-415
18   Stroller, and he negotiated with managers at Lerado over

19

20

21
   ────────────────────
22        [3] The parties disagree whether Lerado is itself a
     stroller manufacturer (SUF ¶ 3), or whether it is the
     parent company of a stroller manufacturer (UMF ¶ 3).  The
23   Court finds this dispute is immaterial, as both sides
     agree on Lerado's role in this action.
24
          [4] The T-415 Strollers are the same as Defendant's
25   model number 9210TW strollers and are the subject of the
     '826 patent.  (SUF ¶ 5; UMF ¶ 5.)  Accordingly, many of
26   the documents refer to the T-415 Strollers as model
     number 9210TW strollers; for ease of reference, however,
27   the Court uses only the term "T-415 Strollers" to refer
     to the strollers that are the subject of the '826 patent.
28

1   the price of the strollers.  (SUF ¶¶ 8, 10; Tsai Decl. ¶¶
2   4-6; id., Ex. A, B, X; UMF ¶¶ 8, 10.)

3

4        In October and November 1998, Defendant and Lerado
5   exchanged purchase order documents regarding Defendant's
6   order of T-415 Strollers from Lerado ("Purchase Order
7   Documents").[5]  (SUF ¶ 9; Tsai Decl. ¶¶ 7-9.)  On December
8   11, 1998, Defendant issued a letter of credit (the
9   "Letter of Credit") in favor of Plaintiff for the
10  purchase of T-415 Strollers.  (SUF ¶ 11; UMF ¶ 11.)

11

12       On December 28, 1998, an independent safety testing
13  company issued a "Certificate of Compliance" for the T-
14  415 Stroller (identified in the Certificate as
15  Defendant's 9210 Stroller).  (SUF ¶ 12; UMF ¶ 12.[6])  On
16  January 25, 1999, Lerado issued a commercial invoice to
17  Defendant (the "January 25, 1999, Invoice") stating a
18  shipping vessel containing 4,500 T-415 Strollers would be

19

20  _____

21       [5] Plaintiff disputes the submitted documents are
    purchase orders, but neither challenges the Tsai
22  Declaration submitting the documents, nor suggests an
    alternative description for the documents, which list
23  item numbers, quantities, order dates, and shipping dates
    of goods with item numbers matching the strollers
24  mentioned above.  (UMF ¶ 9.)  The Court thus overrules
    Plaintiff's challenges to these documents, based in part
25  upon its previous ruling against the Wu Declaration.

26       [6] The parties do not dispute this fact, although the
    Court notes that the quality of the submitted Certificate
27  of Compliance is so poor as to render it almost
    unreadable.  (See, RJN, Ex. 6 (Pl.'s Opp'n to Def.'s Mot.
28  for Order Disallowing Claim); id., Ex. B.)

sailing to Los Angeles on or about January 27, 1999.
(Tsai Decl., Ex. I.)

## II. LEGAL STANDARD

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); see also Hodosh v. Block Drug Co., Inc., 786 F.2d 1136, 1141 (Fed. Cir. 1986) (holding summary judgment to be appropriate "in patent as in other cases").  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict."  Anderson, 477 U.S. at 250.

The initial burden is on the moving party to demonstrate that it is entitled to summary judgment. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998); In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).  The moving party bears the burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. <u>Celotex</u>, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. <u>Id.</u>; <u>In re Oracle</u>, 627 F.3d at 387.

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. <u>Celotex</u>, 477 U.S. at 324; <u>Anderson</u>, 477 U.S. at 256. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322; <u>Anderson</u>, 477 U.S. at 252; <u>see also</u> Fed. R. Civ. P. 56(c); <u>Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.</u>, 731 F.2d 831, 836 (Fed. Cir. 1984) ("The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient.").

A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at

248.   In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party.  <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135 (9th Cir. 1991); <u>In re Oracle</u>, 627 F.3d at 387; <u>Barmaq Barmer</u>, 731 F.2d at 836.

### III. DISCUSSION

Plaintiff claims Defendant "has manufactured, used, sold or offered for sale at least one design of a baby stroller that infringes the '826 [p]atent" and "at least one design of a baby stroller that infringes the '057 [p]atent."  (FAC ¶¶ 8-9.)  Specifically, Plaintiff alleges Defendant's model number 9114 "Expedition Jogging Stroller," which Defendant sold in 2006, infringes both patents, and several other strollers Defendant created and sold might also infringe the two patents.  (Opp'n at 6.)

Defendant argues it is entitled to summary judgment, or partial summary judgment, on multiple grounds. Regarding the '826 patent, Defendant first argues the patent is invalid based upon the "on-sale bar" codified in 35 U.S.C. § 102(b).  (Mot. at 11-16.)  Defendant next argues that even if the '826 patent is not invalid, its strollers do not infringe the '826 patent.  (<u>Id.</u> at 16-21.)  Regarding the '057 patent, Defendant first argues the patent is invalid as obvious under 35 U.S.C. § 103.

1  (<u>Id.</u> at 21-34.)  Defendant next argues that even if the

2  '057 patent is not invalid, its strollers do not infringe

3  the patent.  (<u>Id.</u> at 34-43.)  Plaintiff disputes

4  Defendant's arguments.

5

6  **A.   The '826 Patent: The On-Sale Bar**

7       Defendant first argues the '826 patent is invalid

8  based upon the on-sale bar because Plaintiff offered the

9  product claimed in the '826 patent (<u>i.e.</u>, the T-415

10  Stroller) for sale and the T-415 Stroller was ready for

11  patenting before the critical date of December 27, 1998,

12  one year before Plaintiff filed the '826 patent

13  application.  (Mot. at 11.)  Plaintiff argues the on-sale

14  bar does not apply because Plaintiff did not make an

15  offer to sell the T-415 Strollers before the critical

16  date, and even if it did make such an offer, those

17  actions did not take place "in this country" as § 102(b)

18  requires.  (Opp'n at 12.)

19

20       **1.   The On-Sale Bar**

21       A patent is presumed valid.  <u>See</u> 35 U.S.C. § 282.

22  Under the on-sale bar, however, an inventor may not

23  patent an invention that has been "on sale" more than one

24  year before the patent application is filed.  35 U.S.C. §

25  102(b); <u>see also</u> <u>Pfaff v. Wells Elecs., Inc.</u>, 525 U.S.

26  55, 57 (1998).  "An invention is so barred when it was

27  both the subject of a commercial offer for sale before

28

the critical date and ready for patenting at the time of the offer." Atlanta Attachment Co. v. Leggett & Platt, Inc., 516 F.3d 1361, 1365 (Fed. Cir. 2008) (citing Pfaff, 525 U.S. at 67).

A party challenging the validity of a patent on the basis of the on-sale bar "must demonstrate by clear and convincing evidence that there was a definite sale or offer to sell" before the critical date. Group One, Ltd. v. Hallmark Cards, Inc., 254 F.3d 1041, 1045-46 (Fed. Cir. 2001); see also Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. __, 131 S.Ct. 2238, 2252-53 (2011) (affirming "clear and convincing evidence" as the standard of proof by which the party with the burden of persuasion must convince the factfinder of patent invalidity). Whether an invention was "on sale" within the meaning of § 102 is a question of law based upon underlying factual determinations. Keystone Retaining Wall Systems, Inc. v. Westrock, Inc., 997 F.2d 1444, 1451 (Fed. Cir. 1993) (internal citations omitted); Microsoft Corp., 131 S.Ct. at 2242-43 (citing Pfaff, 525 U.S. at 67-69).

The purpose of the on-sale bar is to balance the benefit of "prompt and widespread disclosure of inventions to the public" with the need to give the inventor a reasonable amount of time to determine whether a patent is worth developing further, while also

"precluding attempts by the inventor or his assignee from commercially exploiting the invention more than a year before the application for patent is filed." W. Marine Elecs., Inc. v. Furuno Electric Co., Ltd., 764 F.2d 840, 845 (Fed. Cir. 1985).

### 2.   Whether the T-415 Strollers Were Offered For Sale

Defendant argues it purchased the T-415 Strollers[7] when Tsai negotiated with Lerado and eventually accepted Lerado's offer to sell T-415 Strollers to Defendant. (Mot. at 11-13.)  Plaintiff concedes Defendant and Lerado were negotiating over the T-415 Strollers, but argues that Lerado did not make a final offer of sale to Defendant, and thus Defendant could not have accepted it. (Opp'n at 16.)  Plaintiff's assertions are belied by the evidence before the Court.

For an offer to satisfy the on-sale bar, the patent owner must make "an offer for sale in the contract sense" as "analyzed under the law of contracts as generally understood." Group One, 254 F.3d at 1046-47.  "Only an offer which rises to the level of a commercial offer for sale, one which the other party could make into a binding contract by simple acceptance (assuming consideration),

---

[7] The parties do not dispute, and the Court finds, that the T-415 Strollers embody the claimed invention of the '826 patent.

1  constitutes an offer for sale under § 102(b)."  Id. at
2  1048.  Here, there is no direct evidence of an offer of
3  sale made by Lerado to Defendant to purchase the T-415
4  Strollers.  There is, however, substantial circumstantial
5  evidence in the form of purchase order documents,
6  financial documents, and shipping documents,
7  demonstrating that Lerado did make such an offer of sale
8  to Defendant, which Defendant accepted.
9
10      Plaintiff disputes the validity of the Purchase Order
11 Documents, but as noted previously, did not submit any
12 admissible evidence controverting them.  The three
13 Purchase Order Documents show a series of orders from
14 Defendant to Lerado for the T-415 Strollers.[8]  Each
15 separate order for the T-415 Strollers, and for other
16 stroller models, is identified by a "P.O. #" (i.e.,
17 purchase order number). (See Tsai Decl., Exs. C-E.)  The
18 Purchase Order Documents list the items being ordered,
19 the quantities, and the dates of the order and the
20 requested and scheduled ship dates. (Id.)  The Purchase
21 Order Documents thus show communication between Lerado
22 and Defendant regarding Defendant's purchase of T-415
23 Strollers.
24
25
26 _____
27     [8] As stated above, Defendant used the model number
   9210TW to identify the T-415 Strollers, so most of the
28 documents identify the strollers as 9210TW.

1    The legitimacy of the Purchase Order Documents is
2  further supported by the Letter of Credit issued on
3  December 11, 1998, which lists Defendant as the applicant
4  and Lerado as the beneficiary. (Tsai Decl., Ex. G.)  The
5  Letter of Credit, which is for a total of $470,185.20,
6  includes two orders for 4,500 T-415 Strollers.  (Id.)
7  Two of the purchase order numbers on the Letter of Credit
8  - LD-306 and LD-307 - match the purchase order numbers
9  from the Purchase Order Documents.  Finally, the January
10 25, 1999, Invoice confirms "P.O. No. LD-307" as an order
11 for 4,500 T-415 Strollers to be shipped on January 27,
12 1999.[9]

13

14    The Federal Circuit has held a purchase order to be
15 evidence of an offer for sale where there was no genuine
16 issue of material fact that the purchase order
17 "memorialized" the defendant's proposal to sell a working
18 prototype of the patented invention to the plaintiff for
19 a set price.  See Netscape Commc'ns Corp. v. Konrad, 295
20 F.3d 1315, 1324-25 (Fed. Cir. 2002).  The Federal
21 Circuit, finding the invention was ready for patenting at
22 the time of the offer for sale, found the patented claims
23 invalid under the on-sale bar.  Id.  Here, as in

24

25 _____

26    [9] It is well-established that "[t]he fact that
   delivery was set for dates after the critical date is
   irrelevant to the finding of a commercial offer to sell
27 [under the on-sale bar]."  STX, LLC v. Brine, Inc., 211
   F.3d 588, 590 (Fed. Cir. 2000) (citing Pfaff, 525 U.S. at
28 67).

<u>Netscape</u>, Defendant introduced Purchase Order Documents setting forth the item number, quantity, sale price, and shipping date of the patented invention.  These Purchase Order Documents, along with the Letter of Credit and the January 25, 1999, Invoice, memorialize a sale agreement between Defendant and Lerado for sale of the T-415 Strollers.

Plaintiff also argues the evidence does not support Defendant's claims that Lerado made an offer of sale to Defendant.  (Opp'n at 13-15.)  Plaintiff asserts, for example, that Tsai's visit to the Lerado factory and the photographs and Purchase Order Documents exchanged by the companies are evidence only that "Lerado and [Defendant] were involved in negotiations for the development and eventual sale of baby strollers."  (Opp'n at 15.) Plaintiff also argues the T-415 Strollers were not offered for sale before the critical date because the strollers had not yet passed safety testing requested by Defendant's retail distributor.  (<u>Id.</u> at 17.)

As explained above, the evidence demonstrates Lerado and Defendant had moved beyond negotiations and into a final sale contract.  Additionally, while the evidence is uncontroverted that a safety testing company issued a certificate of compliance for the T-415 Strollers on December 28, 1998, Plaintiff does not provide any basis

1   for its argument that the strollers could not be sold
2   before they received safety compliance certification, nor
3   that the sales transaction between Lerado and Defendant
4   was contingent upon issuance of a safety compliance
5   certification.

6

7       Viewing the record as a whole, the Court finds
8   Defendant has introduced clear and convincing evidence to
9   support its contention that Plaintiff, through its parent
10  company Lerado, made an offer to sell the T-415 Strollers
11  to Defendant before the critical date of December 27,
12  1998.  While Lerado and Defendant may have been
13  negotiating up until early December, the Court finds the
14  Letter of Credit issued on December 11, 1998, is evidence
15  the companies had reached a final agreement for sale of
16  the strollers.  The evidence further shows Defendant
17  accepted Lerado's offer of sale, and Lerado then shipped
18  4,500 T-415 Strollers to Defendant in January 1999.

19

20      Plaintiff argues that, at the least, there are
21  "different possible interpretations of what these
22  transactions meant" and thus there is a genuine issue of
23  material fact over whether Lerado offered the T-415
24  Stroller for sale before December 27, 1998.  (Opp'n at
25  16.)  At the hearing, Plaintiff also argued that the
26  Court should not grant the Motion because all of the
27  relevant documentation was provided by Defendant.

28

Plaintiff has not, however, offered any evidence
supporting its contention that the T-415 Stroller were
not "on-sale" before the critical date, nor does it offer
any interpretations of the documents supporting its
theory.  Where the moving party has met its burden on a
motion for summary judgment, "its opponent must do more
than simply show that there is some metaphysical doubt as
to the material facts . . . . Where the record taken as a
whole could not lead a rational trier of fact to find for
the nonmoving party, there is no 'genuine issue for
trial.'"  Scott v. Harris, 550 U.S. 372, 380 (2007)
(quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith
Radio Corp., 475 U.S. 574, 586-87 (1986)).


     The Court finds Defendant has provided clear and
convincing evidence that Lerado made an offer to sell the
T-415 Strollers to Defendant before the bar date of
December 27, 1998, and that Defendant accepted that
offer.


     **3.   Whether The Sale Was In This Country**
     Plaintiff argues that, even if Lerado made an offer
to sell the T-415 Strollers to Defendant before the
critical date, the exchange does not satisfy § 102(b)
because the offer was not made "in this country" and
instead was made abroad.  (Opp'n at 17-18.)  Defendant
argues Lerado's offer to sell the T-415 Strollers to

1  Defendant was made in this country because the two

2  companies negotiated by correspondence, and offers

3  originating abroad but directed to companies in the

4  United States satisfy the on-sale bar.  (Mot. at 13-14.)

5

6      Defendant contends that because it is a California-

7  based company, Lerado's negotiations and eventual sale

8  offer were directed to the United States.  Defendant

9  supports its argument by referring to the Federal

10  Circuit's holding that an offer made by a company in

11  England which was "directed to" an American company's

12  place of business in the United States fell under the on-

13  sale bar.  In re Caveney, 761 F.2d 671, 676-77 (Fed. Cir.

14  1985).

15

16      In Caveney, the court upheld the Patent and Trademark

17  Office's rejection of a patent application on the basis

18  of the on-sale bar because the patented product was sold

19  by its English manufacturing company more than a year

20  before the bar date.  Id. at 673-74.  The Circuit

21  rejected the patent applicant's argument that the offer

22  to sell was outside the scope of the on-sale bar because,

23  although the manufacturer "presumably made its offer from

24  England, that offer was directed to [the buyer] at its

25  place of business in the United States."  Id. at 677.

26  The facts of Caveney are similar to the facts here; both

27  cases involve the sale of a claimed invention by a

28

foreign manufacturer to an American company's place of
business in the United States, and thus the on-sale bar
likewise applies to Lerado's sale of the T-415 Strollers
to Defendant.

    By contrast, the cases Plaintiff cites in support of
its argument are easily distinguishable from the facts of
this action.  In <u>In re Elsner</u>, 381 F.3d 1125 (Fed. Cir.
2004), the Federal Circuit, while examining the issue of
prior publication under § 102(b), noted that "foreign
sales themselves do not constitute an on-sale bar."  <u>Id.</u>
at 1128.  In <u>Elsner</u>, however, the referenced foreign
sales took place entirely abroad - specifically in
Germany, South Africa, and Zambia - with no connection to
the United States or any of its residents.  <u>Id.</u> at 1127.
Thus the sales at issue in <u>Elsner</u> are distinguishable
from the facts here, where the goods were sold to
Defendant, an American company based in Ontario,
California.

    Plaintiff's reliance on <u>Robbins Co. v. Lawrence
Manufacturing Co.</u>, 482 F.2d 426 (9th Cir. 1973), is
similarly misplaced.  In <u>Robbins</u>, the Ninth Circuit
determined that an offer of sale consummated in and
directed toward Australia still fell within the on-sale
bar because "sufficient activity prefatory" to the sale
occurred in the United States, including the making of

the offer, some contract negotiations, and the testing,
disassembly, and packing of the machine.  Id. at 434-35.
In Robbins, the patented invention was a tunnel boring
machine sold to an Australian commission for use in
Australia.  Id. at 428-29.  The Ninth Circuit focused on
the activity that occurred in the United States to apply
the on-sale bar, despite the fact that the claimed
invention was paid for and used abroad.  Id. at 434-35;
see also Aquayo v. Universal Instruments Corp., 356 F.
Supp. 2d 699, 741-43 (S.D. Tex. 2005) (holding the on-
sale bar was triggered where actual offer of sale
occurred in the United States, although claimed invention
was both manufactured and used abroad).  Thus, in cases
involving an offer of sale between a foreign party and a
domestic party, courts have found the on-sale bar
applicable in circumstances where the connection to the
United States is far more tenuous than it is here.

    "The overriding concern of the on-sale bar is an
inventor's attempt to commercialize his invention beyond
the statutory term."  Netscape, 295 F.3d at 1323 (citing
STX, 211 F.3d at 590); see also Atlanta Attachment, 516
F.3d at 1365 ("Our patent laws deny a patent to an
inventor who applies for a patent more than one year
after making an attempt to profit from his invention by
putting it on sale.").  The language of the statute
focuses on commercialization which occurs "in this

country" more than a year before the patent application
date.  35 U.S.C. § 102(b).

During their negotiations over the sale of the T-415
Strollers, Defendant and Lerado were aware that a
successful transaction would lead to the eventual sale of
the strollers in the United States.  It would be contrary
to the intent of the statute to find that where a foreign
company manufactures goods for sale in the United States,
and makes an offer of sale of these goods to a United
States company, the sale is exempt from the on-sale bar.
Accordingly, the Court finds that Lerado's offer of sale
to Defendant of the T-415 Strollers occurred "in this
country" for purposes of the on-sale bar.  See Caveney,
761 F.2d at 676-77.

### 4.   The '826 Patent Was Ready For Patenting

Plaintiff does not dispute that the design in the
'826 patent was "ready for patenting" prior to the bar
date.  (Opp'n at 18.)  The photographs sent by Lerado's
managers to Tsai support this fact, as they demonstrate
that the '826 patent design had been "reduc[ed] to
practice" before the bar date.  See Pfaff, 525 U.S. at 67
(stating that one way to prove an invention is ready for
patenting is to provide proof of its "reduction to
practice before the critical date").  Thus, the Court
finds the design claimed in the '826 patent was ready for

1  patenting at the time Lerado and Defendant negotiated for
2  sale of the T-415 Strollers.

3

4      The invention disclosed in the '826 patent is thus
5  invalid under the on-sale bar because it "was both the
6  subject of a commercial offer for sale before the
7  critical date and ready for patenting at the time of the
8  offer." <u>Atlanta Attachment</u>, 516 F.3d at 1365.  The
9  evidence shows that Plaintiff's parent company, Lerado,
10 offered the T-415 Strollers to Defendant for sale in late
11 November or early December of 1998, and Defendant
12 accepted that offer.  The offer satisfies the requirement
13 of occurring "in this country" because the offer was
14 directed toward an American company, and the goods were
15 to be sold in the United States.  At that time, the
16 design claimed in the '826 patent was ready for
17 patenting.  Accordingly, the Court finds the '826 patent
18 is invalid under the on-sale bar.  <u>See</u> 35 U.S.C. §
19 102(b).

20

21     As the Court finds the '826 patent is invalid, it
22 need not address Defendant's secondary argument that its
23 strollers do not infringe the '826 patent.

24

25 **B.  The '057 Patent: Obviousness Based Upon Prior Art**
26     Defendant argues it did not infringe the '057 patent,
27 because the invention claimed in the '057 patent is one
28

1   that would have been obvious to one of ordinary skill in

2   the art of folding strollers.  (Mot. at 21-22.)

3   Defendant thus asserts that, based upon devices and

4   features disclosed in prior art, the alleged invention of

5   the '057 patent is invalid for obviousness.  (Id. at 22-

6   34.)

7

8        Plaintiff contends Defendant's obviousness defense

9   fails because the prior art does not disclose the key

10  element of the '057 patent, i.e., the sliding plate.

11  (Opp'n at 27.)  Plaintiff also argues that even if the

12  prior art disclosed a sliding plate, incorporating that

13  sliding plate into the folding mechanism of the '057

14  patent "would have been beyond the level of skill in the

15  art" at the time of Plaintiff's invention.  (Id.)

16

17  **1.   Obviousness**

18       A patent is presumed valid.  See 35 U.S.C. § 282.  A

19  party seeking to establish invalidity bears the burden of

20  proving invalidity by clear and convincing evidence.

21  Moba, B.V. v. Diamond Automation, Inc., 325 F.3d 1306,

22  1319 (Fed. Cir. 2003).  Under 35 U.S.C. § 103(a), "[a]

23  patent may not be obtained . . . if the differences

24  between the subject matter sought to be patented and the

25  prior art are such that the subject matter as a whole

26  would have been obvious at the time the invention was

27

28

made to a person having ordinary skill in the art to
which said subject matter pertains."

     A determination of "obviousness" rests upon the
following factual findings:  (1) the scope and content of
the prior art; (2) the differences between the claimed
invention and the prior art; (3) the level of ordinary
skill in the art; and (4) any relevant secondary
considerations, including commercial success, long felt
but unsolved needs, and failure of others (collectively,
the "Graham factors").  Graham v. John Deere Co., 383
U.S. 1, 17 (1966).  Though a court must base its
obviousness determination on these factual findings, the
question of whether a patent is obvious is ultimately a
question of law.  KSR Int'l v. Teleflex Inc., 550 U.S.
398, 427 (2007); Graham, 383 U.S. at 17.

     Where a patent is comprised of several elements, each
of which was known in the prior art, an objective reason
to combine those elements must exist in order to support
a finding of obviousness.  KSR Int'l, 550 U.S. at 418-19.
Though the existence of a teaching, suggestion, or
motivation in the prior art to combine known elements may
be probative of obviousness, the absence of a teaching,
suggestion, or motivation does not preclude a finding of
obviousness.  See id.  "[A] court can take account of the

inferences and creative steps that a person of ordinary skill in the art would employ." <u>Id.</u> at 418.

### 2.   The Sliding Plate

The '057 patent discloses the following claim:

1. A folding device for a stroller comprising:

a driving member movably mounted around a top portion of an upper support of the stroller and having a protrusion extending out therefrom, a first post movably received within a first slot defined in a periphery of the upper support and securely connected with said driving member, and a strip extending within the upper support and having a first distal end securely connected with said first post;

a driven member having a second post movably received within a second slot defined in a periphery of the upper support and a sliding plate slidably received within the upper support and securely connected with said second post and a second distal end of said strip;

a recovery member having a first end securely mounted to a distal end of the upper support and a second end of which is securely connected with said sliding plate; and

a cover enclosing a top end of a front support of the stroller and having a recess defined therein; said recess being defined to detachably receive said second post therein. ('057 patent, col. 3, l. 21—col. 4, l. 18.)

The '057 patent thus discloses a folding mechanism for a baby stroller illustrated in figure 3 of the patent.

1



FIG.3

18

19    The folding mechanism is operated by a protrusion
20  (411), or trigger, extending out from the driving member
21  (41) located on the upper support (20) of the stroller.
22  ('057 patent, col. 2, ll. 26-31.)  When the trigger is
23  pulled (in the direction shown by arrow A in figure 5,
24  below), due to the connection between the strip (50) and
25  the sliding plate (44), the second post (204) leaves a
26  recess (113), allowing the upper support to be separated
27  from the front support and the stroller to be folded.

28

1  (Id., col. 2, ll. 55-65; id., fig. 5.)  When the trigger
2  is released, the recovery member (43), or spring, causes
3  the sliding plate to return to its original position.
4  (Id., col. 2, l. 65-col. 3, l. 3; see also id., fig. 5.)



FIG.5

22
23     The parties agree that, based upon claims disclosed
24  in a prior patent, the only novel element of the '057
25  patent is the development of the sliding plate (44) (the
26  "'057 sliding plate").  (Mot. at 22; Opp'n at 27.)
27
28

1    Plaintiff concedes that the Evenflo patent,[10] filed on
2    September 25, 1997, "discloses each element of claim 1 of
3    the '057 patent except the critical sliding plate."
4    (Opp'n at 27.)  Thus, the Court finds the only element of
5    the '057 patent not disclosed in the Evenflo patent is "a
6    sliding plate slidably received within the upper support
7    and securely connected with said second post and a second
8    distal end of said strip." ('057 patent, col. 4, ll. 9-
9    11; see Opp'n at 27.)

10

11       As explained above, the '057 sliding plate is part of
12   the driven member (42), or folding mechanism, located on
13   the upper support of the stroller. ('057 patent, col. 2,
14   ll. 37-52; see also fig. 3.)  The sliding plate is
15   securely connected to three items:  a strip (50), a
16   recovery member (43), and a post (204).  (Id.)  The
17   strip[11] runs along the upper support of the stroller and

18   _____

19       [10] The "Evenflo patent" is U.S. Patent No. 6,139,046,
     filed September 25, 1997, a utility patent entitled
20   "Stroller With Improved Features."  (Lin Decl., Ex. N
     (Evenflo patent).)  Although the Evenflo patent was not
21   issued until October 31, 2000, after a patent is issued,
     its contents are considered prior art as of the date the
22   application was filed.  See 35 U.S.C. § 102(e); Baxter
     Int'l, Inc. v. COBE Labs., Inc., 88 F.3d 1054, 1062 (Fed.
23   Cir. 1996) ("[T]he patent text remains secret while the
     patent application is pending, but after the patent is
24   issued its subject matter is deemed to be prior art as of
     its filing date.") (citing Hazeltine Research, Inc. v.
25   Brenner, 382 U.S. 252, 254-55 (1965)).  Accordingly, the
     contents of the Evenflo patent are prior art as of
26   September 25, 1997, over a year before the '057 patent
     was filed.

27       [11] Previously, the Court construed the strip as "a
28                                              (continued...)

                                30

connects the driving member (41) at the top portion of
upper support to the driven member (42) at the lower
portion of the upper support.  (Id., col. 2, ll. 37-41.)
The recovery member[12] is defined as something "such as a
coil spring."  (Id., col. 2, ll. 30.)  The post is
"detachably received" within a recess (113) defined in a
cover (112).  (Id., col. 2, ll. 53-55; see also figs. 3,
5.)

    Accordingly, the '057 sliding plate discloses the
following features:  (1) it is part of the connection
between the trigger and the folding mechanism of the
stroller; and (2) it is connected to (a) a strip that
links the trigger and the folding mechanism, (b) a
spring, and (c) a post that engages and disengages the
folding mechanism.

### 3.  **Graham** Factors
#### a.  **Scope and Content of Prior Art**
    Whether a patent is invalid as obvious depends upon
the subject matter contained within prior art that would

--------

    [11](...continued)
piece of inextensible material that is long, narrow, and
flat."  (Claim Constr. Order at 7.)

    [12] Previously, the Court construed the recovery
member as "the component positioned between the sliding
plate and the distal end of the upper support, with its
first end attached securely at or near the end of the
upper support that is farthest away from the handle and
its second end being connected securely to the sliding
plate."  (Claim Constr. Order at 9-10.)

1  have been known by a person of ordinary skill in the art
2  of folding strollers.  35 U.S.C. § 103(a); <u>see also</u> <u>Ruiz</u>
3  <u>v. A.B. Chance Co.</u>, 234 F.3d 654, 664 (Fed. Cir. 2000)
4  ("[T]he relevant inquiry for determining the scope and
5  content of the prior art is whether there is a reason,
6  suggestion, or motivation in the prior art or elsewhere
7  that would have led one of ordinary skill in the art to
8  combine the references.").  Here, the parties do not
9  dispute the four additional patents that are within the
10  scope of the prior art.  Accordingly, the Court finds the
11  following four patents are all within the scope of
12  relevant prior art to the '057 patent, and considers the
13  content of these patents.
14
15                  **i.   The Evenflo Patent**
16       The first patent that is part of the prior art is the
17  Evenflo patent.  The parties do not dispute the Evenflo
18  patent discloses a stroller-folding mechanism in which a
19  user can fold the stroller by pulling upward on a finger
20  (104) that causes a pin (94) to disengage from notches
21  (84) in an engagement surface (82) in the folding
22  mechanism.  (Opp'n at 27; Evenflo patent, col. 7, ll. 11-
23  50; <u>id.</u>, fig. 7.)
24
25
26
27
28



FIG. 7

13      In the Evenflo patent, as in all of the prior art,
14  the inventors use different terms to refer to stroller
15  components similar to components in the '057 patent.
16  Using the terms of the '057 patent, the Evenflo patent
17  discloses a stroller folding-mechanism in which a user
18  can fold the stroller by pulling upward on a trigger that
19  causes a post to disengage from recesses in a cover in
20  the folding mechanism.

21

22      The Evenflo patent trigger is connected to the post
23  by a wire (100), or strip, located within the hollow
24  interior of the upper frame (62); the post is also
25  connected to a tension spring (98) which serves to bias
26  the pin toward the lower end of the upper frame.
27  (Evenflo patent, col. 7, ll. 19-31.)

28

**ii. The Arai Patent**

The second patent that is part of the prior art is the Arai patent.[13]  Although their descriptions of the patent differ slightly, the parties agree the Arai patent discloses a device on the handlebar of a stroller that locks and unlocks the folding mechanism of the stroller, preventing the stroller from collapsing inadvertently.[14] (Mot. at 26-27; Opp'n at 28; Arai patent, col. 1, l. 61—col. 2, l. 6; id., Abstract; id., fig. 3.)

//

_____

[13] The "Arai patent" is U.S. Patent No. 5,511,441, filed September 28, 1993, a utility patent entitled "Locking/Unlocking Manipulation Mechanism Disposed on the Handlebars of Baby Carriage."  (Lin Decl., Ex. S (Arai patent).)

[14] To the extent Plaintiff's description of the Arai patent differs from Defendant's description and does not conflict with the language of the patent itself, the Court uses Plaintiff's phrasing to describe the Arai patent.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24



FIG. 3

25    The Arai patent discloses a stroller-locking

26 mechanism in which a user presses a button (6) on the

27 handlebar (15) of the stroller that causes a drive pin

28

1  (19), or post, to disengage from the locking mechanism

2  located on the side of the stroller.  (Arai patent, col.

3  3, ll. 10-28.)   The button is connected to the post by a

4  manipulation wire (3), or strip, that extends along the

5  upper frame and is then connected to a slider (18) (the

6  "Arai slider").   (Id.)  The Arai slider is connected to

7  the strip, a spring or coil, and a post. (Id.)

8

9                  iii.     The Ziegler Patent

10      The third patent making up the prior art is the

11  Ziegler patent.[15]   The parties agree the Ziegler patent

12  discloses a collapsible three-wheeled stroller with side

13  frame intermediate pivot assemblies (34) including

14  spring-biased slidable plungers (96).   (Ziegler patent,

15  col. 6, ll. 15-48; figs. 4, 11, 12.)

16  //

17

18

19

20

21

22

23

24

25

26

27  [15] The "Ziegler patent" is U.S. Patent No. 5,863,061
    filed October 25, 1996, a utility patent entitled
    "Collapsible Three Wheeled Stroller."  (Lin Decl., Ex. T
28  (Ziegler patent).)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18  //
19
20
21
22
23
24
25
26
27
28



FIG. 4

37

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



*FIG. 11*     *FIG. 12*

24    The Ziegler patent discloses a stroller-folding

25  mechanism where a user pivots the upper lateral braces,

26  causing a plunger (96) (the "Ziegler plunger") to

27  disengage from a receptacle component (94) in the side

28

pivot assembly (34).[16]  (Ziegler patent, col. 6, ll. 18-30.)  The Ziegler plunger is connected to the upper lateral braces by a plunger linkage (102), or strip, located in the handlebar, and is also connected to a spring.  (Id., col. 6, ll. 36-48; see also id., col. 8, ll. 8-14, 22-29.)

### iv.  The Huang Patent

The fourth patent within the scope of the prior art is the Huang patent.[17]  The parties do not dispute the Huang patent discloses a foldable stroller with a manipulation mechanism (30) located on the handlebar. (Mot. at 32; Opp'n at 31; Huang patent, Abstract; id., figs. 1, 4.)

//

---

[16] As the Ziegler patent discloses identical pivot assemblies on each side of the stroller (see Ziegler patent, col. 6, ll. 16-18), the Court describes only one of the plungers.

[17] The "Huang patent" is U.S. Patent No. 5,769,447, filed on April 1, 1996, a utility patent entitled "Foldable Stroller."  (Lin Decl., Ex. Q (Huang patent).) Defendant states the Huang patent is not part of the prior art reference because it had not yet issued prior to the filing of the '057 patent (Mot. at 32, n.4); however, as noted earlier, an issued patent is considered prior art as of the date it was filed, even though its contents are not publicly disclosed until issuance. See Hazeltine, 382 U.S. at 254-55.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23  //
24
25
26
27
28



FIG. 1

40

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



FIG. 4

24      The Huang patent discloses a stroller-folding
25 mechanism where a user presses a lever on the handlebar
26 (31) that causes cables (34) located in the upper support
27 (11) to move upwards, causing a slidable seat to be
28

41

disengaged from a positioning seat so the stroller may be folded. (Huang patent, col. 4, ll. 7-18.) The cables are connected to a coupling (26) (the "Huang coupling") or sliding plate, which is also connected to a pin (24), or post, that secures the slidable seat in the stroller. (Id., col. 3, l. 64—col. 4, l. 6.) The coupling is connected to the cables, the post, and a spring (25). (Id.; id., fig. 4.)

### b. Differences between the Claimed Invention and the Prior Art

The next step of the Graham analysis requires the Court to make factual findings as to the differences between the claimed invention - the '057 sliding plate - and the prior art. Graham, 383 U.S. at 17.

### i. The Evenflo Patent

The Court finds the Evenflo patent discloses each element of claim 1 of the '057 patent except for the '057 sliding plate.

### ii. The Arai Patent

Defendant argues the Arai slider is equivalent to the '057 sliding plate in both its position on the stroller and its manner of operation. (Mot. at 27.) Plaintiff "disagrees that the Arai slider 18 is analogous" to the '057 sliding plate. (Opp'n at 28.) Plaintiff also

argues it would have been difficult to re-engineer either
the Arai slider or the Evenflo patent to combine the Arai
slider with the folding mechanism disclosed in the
Evenflo patent.  (Id. at 29.)  The Court addresses
Plaintiff's arguments regarding the obviousness of
combining the slider of the Arai patent with the folding
mechanism of the Evenflo patent in Section B.4, infra.

The Arai patent discloses a locking mechanism located
on the side of the stroller which is operated by pressing
a button on the handlebar of the stroller.  The button on
the handlebar is connected to the locking mechanism by a
manipulation wire, which is connected to a slider.  The
Arai slider also connects to a drive pin, which engages
and disengages the locking mechanism, and a spring or
coil.  (See Arai patent, fig. 3.)  Although the Arai
patent discloses a locking mechanism rather than a
folding mechanism, the location and basic structure of
the locking mechanism are similar to the folding
mechanism disclosed in the '057 patent.

The Court finds the Arai slider is similar to the
'057 sliding plate in that both are:  (1) part of the
connection between the button or trigger and the
folding/locking mechanism of the stroller; and (2)
connected to (a) a cable or wire linking the trigger or
button with the folding/locking mechanism, (b) a spring,

1  and (c) a drive pin or post that engages and disengages

2  the folding/locking mechanism.

3

4      The main difference between the two patents is that

5  the folding mechanism disclosed in the '057 patent

6  involves a post which sits in a recess, while the locking

7  mechanism disclosed in the Arai patent involves a drive

8  pin that engages the locking mechanism directly.[18]

9

10              **iii.    The Ziegler Patent**

11     Defendant also asserts the Ziegler plunger is the

12  equivalent of the '057 sliding plate.  (Mot. at 29-32.)

13  Plaintiff argues the Ziegler plunger is not the

14  equivalent of the '057 sliding plate because:  (1) the

15  plunger is not connected to a post, while the '057

16  sliding plate is; and (2) the plunger is not "slidably

17  received within the upper support" and is instead located

18  outside of the support arm and within a separate housing.

19  (Opp'n at 30-31.)

20

21

22

23

24
_____

[18] The slider and spring disclosed in the Arai patent
are not the focus of the patent, however.  While the
slider and its connection to the button on the handlebar
are disclosed in Figure 3 of the patent, the spring is
neither named nor identified by number in the patent.
(See Arai patent, fig. 3.)  The Arai patent states that
because details of the slider and drive pin are disclosed
in other Japan Utility Mode Applications, these two
elements are not described in detail in the patent.
(Arai patent, col. 3, ll. 14-19.)

25

26

27

28

1    In the Ziegler patent, the plunger secures the
2 stroller in its unfolded and usable position.  In the
3 '057 patent, the second post, which is attached to the
4 sliding plate, secures the stroller in its unfolded and
5 usable position.  In both patents, the plunger or sliding
6 plate is attached to a spring, and also connected to the
7 upper portion of the stroller where the folding is
8 initiated.

9

10    The Court finds the Ziegler plunger is similar to the
11 '057 sliding plate in that both are:  (1) part of the
12 connection between the upper portion of the stroller and
13 the side folding mechanism or "pivot assembly"; and (2)
14 connected to (a) a strip or plunger linkage linking the
15 upper portion of the stroller with the side folding
16 mechanism and (b) a spring.

17

18    The Ziegler plunger differs from the '057 sliding
19 plate because the Ziegler plunger engages the folding
20 mechanism directly, whereas the '057 sliding plate is
21 connected to the post that engages the folding mechanism.
22 A second difference, highlighted by Plaintiff, is that
23 unlike the '057 sliding plate, the Ziegler plunger is not
24 located within the upper support itself, although it is
25 connected to the upper portion of the stroller by means
26 of a "plunger linkage" which is located within the upper
27 support.

28

1

### iv.  The Huang Patent

2      Finally, Defendant argues the Huang coupling is

3  equivalent to the '057 sliding plate.  (Mot. at 32.)

4  Plaintiff argues the Huang patent discloses elements that

5  are very different from those in the '057 patent, and the

6  Huang coupling is not like the '057 sliding plate.

7  (Opp'n at 31-32.)

8

9      The Court finds the Huang coupling is similar to the

10  '057 sliding plate in that both are:  (1) part of the

11  connection between the upper portion of the stroller and

12  the folding mechanism; and (2) connected to (a) a cable

13  linking the upper portion of the stroller with the

14  folding mechanism and (b) a spring.

15

16      The Huang coupling differs from the '057 sliding

17  plate in that the coupling is itself part of the folding

18  mechanism, as the coupling disengages the slidable seat

19  so that the stroller may be folded.  Additionally, the

20  folding mechanism disclosed in the Huang patent is

21  different from the '057 patent's folding mechanism in

22  that the Huang patent involves a slidable, disengaging

23  seat.

24

25      ### c.  Level of Ordinary Skill in the Art

26      As part of the <u>Graham</u> analysis, the Court also must

27  make a factual determination of the level of ordinary

28

46

skill in the art.  Graham, 383 U.S. at 17.  Here, neither
party proposes any definition of a person of "ordinary
skill in the art" of folding baby strollers.

    The Federal Circuit has upheld decisions in which the
district court did not make any factual finding as to the
level of ordinary skill in the art.  See, e.g., Chore-
Time Equip., Inc. v. Cumberland Corp., 713 F.2d 774, 779
(Fed. Cir. 1983) (upholding summary judgment on
obviousness in action where "because the subject matter
of the patent and the prior art were in this case so
easily understandable, a factual determination of the
level of skill in the art was unnecessary.").

    Generally, however, failure to make a finding as to
the level of ordinary skill can be grounds for reversal
or remand, on the basis that the district court failed to
do a proper Graham analysis.  See, e.g., Ruiz, 234 F.3d
at 663 ("Our precedent clearly establishes that the
district court must make Graham findings before
invalidating a patent for obviousness.") (internal
citations omitted); see also Bausch & Lomb, Inc. v.
Barnes-Hind/Hydrocurve, Inc., 796 F.2d 443, 451 (Fed.
Cir. 1986) (vacating trial court opinion and remanding to
district court based upon the court's failure to make
Graham findings).  Accordingly, the Court considers the

1  following facts in determining the level of ordinary
2  skill in the art of folding baby strollers.
3
4      In determining the level of ordinary skill in the
5  art, factors a court may consider include "(1) the types
6  of problems encountered in the art; (2) the prior art
7  solutions to those problems; (3) the rapidity with which
8  innovations are made; (4) the sophistication of the
9  technology; and (5) the educational level of active
10 workers in the field." Ruiz, 234 F.3d at 666-67 (citing
11 Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.,
12 807 F.2d 955, 962 (Fed. Cir. 1986)).  The person of
13 ordinary skill is "a hypothetical person who is presumed
14 to be aware of all the pertinent prior art."  Custom
15 Accessories, 807 F.2d at 962.
16
17     The '057 patent and the prior art patents seek to
18 increase the ease of folding the stroller, while
19 maintaining a sturdy frame for the stroller during
20 unfolding and use.  (See, e.g., '057 patent, col. 1, ll.
21 6-9 ("The present invention relates to a device . . .
22 which allows the stroller to be securely expanded and
23 further to be folded easily."); Ziegler patent, col. 2,
24 ll. 8-11 ("It is a further object of the present
25 invention to provide such a . . . stroller wherein
26 collapsing and folding can be initiated in a one step
27 manner.").)
28

1    The prior art solutions to these problems include
2 variations on the elements of folding mechanisms
3 previously discussed.  Innovations in the relevant art
4 occur with some rapidity; the patents that make up the
5 prior art here were all filed between September 28, 1993
6 (the Arai patent), and January 8, 1998 (the '057 patent),
7 and, as described above, many of them contain overlapping
8 or similar elements and designs.

9

10    In considering the sophistication of the technology
11 and the educational level of active workers in the field,
12 the Court notes neither Defendant nor Plaintiff provide
13 any expert testimony to support their arguments.[19]  The
14 patents discussed here do not contain any advanced
15 technology, and understanding them requires only a
16 rudimentary knowledge of physics and engineering.
17 Accordingly, the Court finds a person of ordinary skill
18 in the art of folding baby strollers does not require an
19 advanced degree.

20

21    As the parties have not submitted any evidence of the
22 level of ordinary skill in the art of folding baby
23 strollers, the Court assumes without deciding that the
24 level of ordinary skill in the art of folding baby

25 _____

26    [19] By contrast, Plaintiff submitted a declaration
from design and manufacturing expert Jonathan S. Colton
27 in support of the motion for a preliminary injunction it
filed in the Northern District of Georgia on January 3,
28 2007.  (Doc. No. 32, Ex. B.)

1    strollers is that of an ordinary layman of average
2    intelligence who is aware of the prior art - here the
3    Evenflo, Arai, Ziegler, and Huang patents.  See, e.g.,
4    Chore-Time, 713 F.2d at 779 n.2 (citing with approval the
5    district court's finding that the ordinary level of skill
6    was that of an "ordinary layman of average intelligence"
7    in case regarding poultry feeding pan patents).  This
8    finding of skill is the most favorable for Plaintiff, as
9    a less sophisticated person of ordinary skill is
10   generally more favorable to a patent owner.  See Union
11   Carbide Corp. v. Am. Can Co., 724 F.2d 1567, 1573 (Fed.
12   Cir. 1984) ("[T]he level of skill of a layman . . . is,
13   except in rare circumstances . . . , the most favorable
14   view for the patent owner.").

15

16              d.   Secondary Indicia of Non-Obviousness
17        The fourth Graham factor includes any "secondary
18   considerations of non-obviousness, which could include
19   "commercial success, long-felt but unresolved need,
20   failure of others, copying, and unexpected results."
21   Ruiz, 234 F.3d at 663.  The parties do not contend, nor
22   does the Court find, any such secondary factors present
23   here.[20]

24   _____

25        [20] In its Reply, Defendant refers to statements by
     Plaintiff regarding the "alleged commercial success" of
26   strollers covered by the '057 patent.  (Reply at 13-14.)
     Plaintiff also raised this issue briefly at the hearing.
27   As Defendant notes in the Reply, however, Plaintiff did
     not seriously argue this point, nor has it provided any
28                                            (continued...)

1    **4.   The Sliding Plate Is Invalid as Obvious**

2        Based on the <u>Graham</u> factors, the Court concludes that

3    it would have been obvious to a person of ordinary skill

4    in the art of folding baby strollers to combine the

5    elements disclosed in the Evenflo patent with the

6    elements disclosed in the prior art patents to create the

7    '057 sliding plate.  As discussed above, for the purposes

8    of this analysis, the Court assumes that a person of

9    ordinary skill in the art of folding baby strollers is an

10   ordinary layman of average intelligence who is aware of

11   the Evenflo, Arai, Ziegler, and Huang patents.

12

13       Plaintiff argues the elements disclosed in the prior

14   art patents do not invalidate the '057 patent for

15   obviousness, because it would not have been obvious to a

16   person of ordinary skill in the art to modify the folding

17   mechanism disclosed in the Evenflo patent with the

18   elements disclosed in the other patents to create the

19   '057 sliding plate.  Plaintiff first argues that none of

20   the elements of the prior art patents are similar to the

21   sliding plate.  (Opp'n at 28-33.)

22

23       As established above, the Court finds the prior art

24   patents disclose elements similar to the '057 sliding

25   plate, particularly the Arai slider.  All of the prior

26   ───────────────

27       [20](...continued)
     evidence to support it.  Accordingly, the Court does not
28   consider this argument here.

art patents disclose a sliding plate element that is:
(1) part of the connection between the trigger and the
folding mechanism of the stroller; and (2) connected to
(a) a cable connecting the folding mechanism to the upper
portion of the stroller and (b) a spring which is part of
the folding mechanism.  The Arai patent in particular
discloses a slider that connects to a cable, a spring,
and a pin in a manner similar to the sliding plate in the
'057 patent.

     Plaintiff next argues that, even if the Arai patent
discloses a slider equivalent to the '057 sliding plate,
it would not be obvious to combine the Evenflo patent
with the Arai patent to create the '057 patent because
the cited objectives of the Arai patent and the '057
patent are at odds.  (Opp'n at 28.)  Plaintiff asserts
the object of the '057 patent is to "provide 'an improved
device for easily operating the folding/unfolding of
stroller'" while the object of the Arai patent is to
"provide a means for 'preventing the manipulation lever
from being inadvertently moved so that the locking means
will remain locked.'"  (Id. (quoting '057 patent, col. 1,
ll. 29-30; Arai patent, col. 2, ll. 1-6).)

     Plaintiff's argument regarding the allegedly
differing objectives of the two patents lacks merit.  As
an initial matter, while the objective of the Arai patent

is to create a useful locking/unlocking mechanism, this
locking mechanism locks the stroller's folding mechanism
to prevent the stroller from inadvertent collapse.
Accordingly, the objective of the Arai patent – to
improve the locking mechanism – is closely related to the
improved operation of the folding mechanism of the
stroller, and is consistent with the stated objective of
the '057 patent.

Moreover, the Supreme Court has emphasized that "the
problem motivating the patentee may be only one of many
addressed by the patent's subject matter." KSR Int'l,
550 U.S. at 420.  When determining obviousness, a court
should keep in mind that "any need or problem known in
the field of endeavor at the time of invention and
addressed by the patent can provide a reason for
combining the elements in the manner claimed." Id.  In
the arena of folding baby strollers, the goal of
increasing stroller-folding ease must be assumed to be a
driving force among all ordinary artisans.  Accordingly,
any improvement to a folding or locking mechanism – such
as the addition of a sliding plate – that makes it easier
to fold and unfold the stroller can be assumed to be a
reason for combining known elements from prior patents.

Plaintiff also argues the addition of a sliding plate
to the mechanism of the Evenflo patent would have been

1   beyond the level of skill in the art at the time of
2   Plaintiff's invention.  (Opp'n at 28-29.)  Plaintiff
3   asserts the inventor would have had to have "ingenuity
4   beyond one of ordinary skill in the art" to make that
5   combination of elements.  (Id. at 29.)  Plaintiff's only
6   argument in support of this assertion is that the
7   addition of the slider from the Arai patent to the
8   mechanism of the Evenflo patent required "re-engineering"
9   of the structures.  (Id.)  Plaintiff's argument appears
10  to suggest the Court find that any new development in a
11  patent that would require adjusting or adding parts is
12  "re-engineering" beyond the skill of an ordinary artisan.
13
14      Plaintiff offers no support for its argument, and the
15  Court declines to adopt it.  Instead, the Court finds
16  that an ordinary artisan of baby strollers would have
17  thought to combine elements previously disclosed in the
18  prior art to incorporate the Arai slider or the Ziegler
19  plunger into the folding mechanism disclosed in the
20  Evenflo patent.  "[A] combination of familiar elements
21  according to known methods is likely to be obvious when
22  it does no more than yield predictable results."  KSR
23  Int'l, 550 U.S. at 401 (finding patent for the
24  combination of an adjustable throttle pedal with an
25  electronic sensor to measure the pedal depression was
26  invalid for obviousness because a person of ordinary
27  skill would have seen the benefit of combining those
28

elements); see also Ecolab, Inc. v. FMC Corp., 569 F.3d
1335, 1348-50 (Fed. Cir. 2009) (finding patent that
combined a known meat-sanitizing solution with a known
method of sanitizing meat by high-pressure spraying was
invalid for obviousness because a person of ordinary
skill would have known why the combination was useful and
how to do it).

        Finally, there is no evidence that any of the prior
art patents "taught away" from the idea of incorporating
a sliding plate into the folding mechanism.  An ordinary
artisan of folding baby strollers would have been aware
of the prior art patents which disclosed elements similar
to the '057 sliding plate, such as the Arai slider, the
Ziegler plunger, and the Huang coupling.  When examining
the prior art, "[a] reference must be considered for
everything it teaches by way of technology and is not
limited to the particular invention it is describing and
attempting to protect," and "the combined teachings of
the prior art as a whole must be considered."  EWP Corp.
v. Reliance Universal, Inc., 755 F.2d 898, 907 (Fed. Cir.
1985) (emphasis in original).  The Arai patent alone
disclosed a sliding device with all the elements of the
'057 sliding plate.  The prior art thus directly taught
to the sliding plate.

1    Moreover, there was reason for the inventor of the
2  '057 patent to want to improve his stroller patent to
3  increase the ease of folding the stroller.  "When there
4  is a design need or market pressure to solve a problem
5  and there are a finite number of identified, predictable
6  solutions, a person of ordinary skill has good reason to
7  pursue the known options within his or her technical
8  grasp."  KSR Int'l, 550 U.S. at 420; see also Dystar
9  Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick
10 Co., 464 F.3d 1356, 1368  (Fed. Cir. 2006) ("[A]n
11 implicit motivation to combine exists not only when a
12 suggestion may be gleaned from the prior art as a whole,
13 but when the 'improvement' is technology-independent and
14 the combination of references results in a product or
15 process that is more desirable, for example because it is
16 stronger, cheaper, cleaner, faster, lighter, smaller,
17 more durable, or more efficient.").

18

19    Finally, the Court relies upon "[c]ommon sense
20 [which] has long been recognized to inform the analysis
21 of obviousness if explained with sufficient reasoning."
22 Perfect Web Techs., Inc. v. InfoUSA, Inc., 587 F.3d 1324,
23 1328 (Fed. Cir. 2009).  The addition of the sliding plate
24 to the folding mechanism disclosed in the Evenflo patent
25 combined a single, simple, element disclosed in prior
26 patents with another known invention.  The Court finds
27 that, to an ordinary artisan of folding baby strollers
28

familiar with the prior art described here, the addition
of a sliding plate to the elements already disclosed in
the Evenflo patent would have been obvious.  See KSR
Int'l, 550 U.S. at 420 ("Common sense teaches, however,
that familiar items may have obvious uses beyond their
primary purposes, and in many cases a person of ordinary
skill will be able to fit the teachings of multiple
patents together like pieces of a puzzle.").

Accordingly, the Court finds Defendant has provided
clear and convincing evidence, in the form of the prior
art patents, that the addition of the sliding plate to
the Evenflo patent to create the invention claimed in the
'057 patent would have been obvious at the time the '057
patent was filed.  Plaintiff has not demonstrated there
is a triable issue of material fact on the issue of
obviousness.  The '057 patent is thus invalid as obvious
under § 103(a).

Because the Court finds the '057 patent is invalid
for obviousness, it need not address Defendant's
secondary argument that its strollers do not infringe the
'057 patent.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment.  The Court finds that (1) the '826 patent is invalid based upon the on-sale bar of 35 U.S.C. § 102(b); and (2) the '057 patent is invalid as obvious under 35 U.S.C. § 103(a).


Dated: <u>August 15, 2011</u>

                         _____
                         VIRGINIA A. PHILLIPS
                         United States District Judge